Hassan A. Zavareei (CA Bar No. 181547)
Andrea R. Gold*
Lauren Kuhlik*
Glenn E. Chappell*
**TYCKO & ZAVAREEI LLP**
1828 L Street NW Suite 1000
Washington, DC 20036
(202) 973-0900
*hzavareei@tzlegal.com*
*agold@tzlegal.com*
*lkuhlik@tzlegal.com*
*gchappell@tzlegal.com*

Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway., Suite 1070
Oakland, CA  94612
(510) 254-6808
*apersinger@tzlegal.com*

*Counsel for Plaintiff and the Proposed Classes*
*\*admitted pro hac vice*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| TANYA FITZPATRICK, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CAPITAL ONE BANK (USA), N.A.,<br><br>Defendant. | Civil Action No. 2:22-cv-00312-MCE-DB<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Judge: Hon. Morrison C. England, Jr.** |

Plaintiff Tanya Fitzpatrick,[1] on behalf of herself and all persons similarly situated, alleges the following:

## INTRODUCTION

1. The COVID-19 pandemic devastated the economy and placed millions of people in financial distress.[2] Among those who suffered were credit card customers, many of whom were drawn into a cycle of high interest and late fees that further threatened their well-being.

2. For example, if a customer does not make a credit card payment by the due date set by Defendant Capital One Bank (USA), N.A. ("Capital One"), or pays an amount that is below the minimum payment required by Capital One, Capital One charges late fees of up to $40 and interest on any balances—including interest on those late fees—carried over to the next month.

3. Through the imposition of these and other fees and penalties, Capital One makes billions of dollars. Capital One's profits remained high throughout the global pandemic, due in no small part to these punitive fees. In 2020, Capital One raked in $1.243 *billion* in service and other consumer charges, including late fees.[3]

4. In its contracts of adhesion with its credit card customers, Capital One retains discretion to charge, waive, or refund late fees and interest on unpaid balances. In the face of public pressure[4] and in a bid to obtain good publicity and attract more business and investors, Capital One exploited this discretion during the COVID-19 crisis by repeatedly promising its credit card customers that it was "here to help" with the financial distress caused by the pandemic and promising to use that discretion to give its customers a lifeline. It promised "assistance" in the form of "waiving fees," "deferring payments on credit cards," and "minimum payment assistance." It advertised that it would forego charging interest on unpaid balances. It declared that "all customers will be eligible for

---

[1] Ms. Fitzpatrick files this Second Amended Complaint pursuant to the Court's March 24, 2022, order (ECF No. 15), which provided for the right to file a further amended complaint once as a matter of course under the circumstances otherwise permitted by Federal Rule of Civil Procedure 15(a)(1).
[2] *E.g.*, Ctr. on Budget & Policy Priorities, *Tracking the COVID-19 Recession's Effects on Food, Housing, and Employment Hardships* (last updated Aug. 9, 2021), https://www.cbpp.org/sites/default/files/8-13-20pov.pdf.
[3] Capital One, *2020 Annual Report* at 53 (2021), https://investor.capitalone.com/static-files/1364d634-a3d5-464d-8505-ddf46eda928d.
[4] *See infra* at ¶¶ 24-26.

**SECOND AMENDED CLASS ACTION COMPLAINT**

assistance." And it repeatedly encouraged its credit card customers to "reach out to discuss and find a solution for you."[5]

5.     But these public promises by Capital One were illusory. Even after widely publicizing its promises to exercise its discretion to waive or refund late fees and interest charges due to the COVID-19 pandemic, Capital One systematically denied requests for such help from its credit card customers, reaping enormous profits as a result. It earned these profits to the detriment of customers who could not make the minimum payment on their credit cards during extreme financial vulnerability caused by the pandemic.

6.     Plaintiff Tanya Fitzpatrick is one such customer. She has a Capital One Platinum Mastercard. Her card is high interest (24.74%), and she must pay a $95 yearly "membership fee" to keep the account open if she maintains a balance. During the pandemic, Ms. Fitzpatrick incurred late fees and interest charges on this card after the pandemic reduced the number of hours she could work.

7.     Believing that they would provide relief under the circumstances, she contacted Capital One (just as it encouraged its customers to do) multiple times to ask for a waiver of these late fees, which were running up already daunting minimum payment amounts.

8.     But Capital One did not keep its public promises. Its representatives repeatedly told her there was nothing they could do, and Capital One continued to charge late fees and interest on her unpaid balances even though it retained discretion to provide relief in its adhesive contracts. It did not exercise the discretion it retained, refusing to even *consider* waiving or refunding late fees or interest to give her a much-needed respite. As a result, the burden of making her minimum payments continued to grow.

9.     Accordingly, Ms. Fitzpatrick brings this action on behalf of herself and a class of all similarly situated consumers against Capital One for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of the consumer protection laws of California.

10.     It is a breach of the covenant of good faith and fair dealing imbedded in every contract for Capital One to (1) provide itself discretion as to whether to charge or waive late fees and interest;

---

[5] *See infra* at ¶¶ 27-35.

**SECOND AMENDED CLASS ACTION COMPLAINT**

1    (2) dishonestly promise customers that it would waive late fees and interest and provide other financial

2    assistance during the deadly COVID-19 pandemic; and (3) consistently exercise its discretion in its own

3    favor, thereby denying in bad faith its most vulnerable customers the full benefit of the contract that

4    Capital One wrote.

5         11.    Additionally, Capital One was and is unjustly enriched as a result of these practices.

6    Capital One sought to use its widely publicized offers to help its customers who were struggling during

7    the pandemic to curry favor with the press, the public, investors, and lawmakers. But to maximize the

8    profits it was raking in from late fees and interest on unpaid credit card balances, Capital One

9    systematically denied requests for assistance in its behind-the-scenes interactions with its customers.

10   This double-dealing was unfair, unconscionable, and oppressive.

11        12.    Further, by promising COVID relief, including, for example, on a page titled

12   "Customer Assistance" on its website where struggling account holders are advised to contact Capital

13   One, and by proclaiming the same in numerous news reports, Capital One misled its customers and

14   other members of the public, including Ms. Fitzpatrick. Ms. Fitzpatrick and other Class members relied

15   on and suffered financial harm from these promises because they would have taken action to avoid

16   these punitive practices had they known that Capital One was going to continue to engage in them

17   during this time of extraordinary financial hardship. Accordingly, these deceptive, unfair, and

18   unconscionable practices violated the California Unfair Competition Law.

19        13.    Ms. Fitzpatrick and other Class members have been injured by Capital One's practices.

20   On behalf of herself and the Class, Ms. Fitzpatrick seeks damages, restitution, disgorgement, and

21   injunctive relief for Capital One's unlawful course of conduct.

22                               **JURISDICTION AND VENUE**

23        14.    This Court has original jurisdiction of this action under the Class Action Fairness Act of

24   2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the

25   aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at

26   least one member of the proposed class is a citizen of a different state than Capital One.

27

28

**SECOND AMENDED CLASS ACTION COMPLAINT**

15.     This Court has jurisdiction over Capital One because Capital One regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in this State.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Capital One is subject to personal jurisdiction here and regularly conducts business in the District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

17.     Ms. Fitzpatrick is a citizen and resident of North Highlands, California. Until 2022, she maintained a Platinum Mastercard credit card account with Capital One. At all times relevant, Ms. Fitzpatrick resided in and received statements for that account at her residence in North Highlands, California.

18.     Capital One is a national bank with its headquarters and principal place of business located in Mclean, Virginia. Among other things, Capital One is engaged in the business of providing consumer credit cards to customers. It provides credit cards to consumers, and thus conducts business, throughout the State of California, including within this District and Division.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.      In its contract, Capital One retains discretion to waive late fees and interest on overdue balances.**

19.     Transactions involving consumer credit cards at Capital One are governed by the Credit Card Agreement, an adhesion contract drafted by Capital One. The Credit Card Agreement is attached to this Complaint as Exhibit A and incorporated herein.

20.     According to the Credit Card Agreement, Capital One has the discretion as to whether to charge late fees: "Late Payment Fee: **We may charge you this Fee** if we do not receive your payment as instructed on your Statement by the payment due date." (Emphasis added).

21.     Capital One also reserves the discretion as to whether to charge interest on overdue credit card balances. The Credit Card Agreement states that if a customer does not make "any payment

when it is due," Capital One "**may take certain actions**" with respect to the customer's account, including "**continue to charge you** *Interest Charges* **and** *Fees* as long as your balance remains outstanding." (Emphases in bold added).

22.     Elsewhere, the Credit Card Agreement discusses Capital One's discretion to remove fees and interest charges:

> **Interest Charges and Fees**
>
> We will charge Interest Charges and Fees to your Account as disclosed on your Statement and other Truth-in-Lending Disclosures.
>
> ***
>
> From time to time, **we may give you offers that allow you to pay less than the total balance and avoid Interest Charges on new purchase Segment transactions**.

(Emphases added).[6]

23.     Against this contractual backdrop, Capital One advertised its purported "assistance" programs to credit card customers during the COVID-19 pandemic.

## II.     Capital One faces public pressure to use its discretion to help its customers during the pandemics.

24.     Regulators and the public alike called for banks to put a stop to predatory late fees during the pandemic. For example, a November 2020 United States Federal Reserve study reported that, in the midst of the pandemic, "[a]s millions of Americans experienced a sudden loss of income, consumers increasingly relied on sources of short-term liquidity, such as savings and credit cards" to make ends meet.[7] And, the study found, in the early days of the pandemic, consumers who "recently experienced a loss of income and [were] under financial stress" complained frequently about "late fees for credit cards."[8] Indeed, consumers complained about these credit cards more often than any other financial product in May, June, and July 2020.[9]

---

[6] "Segments" are defined as the "different parts of your Account we may establish that are subject to unique APRs, pricing, or other terms." Segments include "purchases, Balance Transfers, Cash Advances, and Special Transfers."

[7] Bd. of Governors, U.S. Fed. Reserve Sys., *The Pandemic's Early Effects on Consumers and Communities*, 2 Consumer & Community Context 18 (Nov. 2020), https://www.federalreserve.gov/publications/files/consumer-community-context-20201118.pdf.

[8] *Id.* at 19.

[9] *Id.* at 17 (Fig. 1).

25.     Federal regulators also pushed banks to help their customers. On March 13, 2020, the Office of the Controller of the Currency issued guidance encouraging banks to "take steps to meet the financial services needs of customers adversely affected by COVID-19-related issues," and specifically asked that they waive late payment fees on credit cards.[10] The guidance explained that such relief measures "serve the long-term interests of communities and the financial system" and "are consistent with safe and sound banking practices and applicable laws."[11]

26.     State officials also asked banks to provide relief from these fees. For example, in March 2020, New York's governor issued an executive order instructing the state's Department of Financial Services to require state-chartered banks to waive late fees and other credit card fees to help lessen the financial hardship of the pandemic on New Yorkers.[12] That same month, the Secretary of California's Business, Consumer Services & Housing Agency and its Commissioner of Business Oversight jointly issued guidance to financial institutions in the state whose customers "may be suffering from loss of income or other financial hardship as a result of the COVID-19 pandemic."[13] They specifically encouraged banks to waive payment fees on credit cards during the state of emergency.[14] And also that same month, the Illinois Department of Financial and Professional Regulation "strongly urge[d] banks and credit unions to respond to borrowers affected by the current economic environment" by waiving fees for "late payments on credit cards."[15]

---

[10] U.S. Office of the Controller of the Currency, *OCC Bulletin 2020-15, Pandemic Planning: Working With Customers Affected by Coronavirus and Regulatory Assistance* (Mar. 13, 2020), https://www.occ.gov/news-issuances/bulletins/2020/bulletin-2020-15.html.

[11] *Id.*

[12] Press Release, N.Y. Dep't Fin. Servs., Governor Cuomo Signs Executive Order Mandating Businesses That Require In-Office Personnel to Decrease In-Office Workforce by 75 Percent (Mar. 19, 2020), https://www.dfs.ny.gov/reports_and_publications/press_releases/pr20203191.

[13] Lourdes Castro Ramirez, Sec'y, Cal. Bus., Consumer Servs. & Housing Agency & Manuel P. Alvarez, Comm'r, Cal. Bus. Oversight, *Guidance to Financial Institutions During the COVID-19 Pandemic* 1 (Mar. 22, 2020), https://www.bcsh.ca.gov/coronavirus19/dbo_banks.pdf.

[14] *Id.* at 2.

[15] Press Release, Ill. Dep't Fin. & Prof'l Regulation, Illinois Department of Financial and Professional Regulation Announces Help for Consumers Struggling to Make Payments on their Debts Due to the COVID-19 Crisis and Guidance for its Regulated Financial Sectors 1 (Mar. 30, 2020), https://www.idfpr.com/News/2020/2020%2003%2030%20IDFPR%20financial%20guidance.pdf.

SECOND AMENDED CLASS ACTION COMPLAINT

### III.     Capital One promises to exercise its contractual discretion to help customers impacted by COVID-19.

27.     In light of this ongoing public pressure and the threat of legislative action, Capital One promised that it would help its most vulnerable customers, including by waiving late fees and interest on unpaid balances.

28.     In March 2020, as governments and companies throughout the United States adopted shutdown measures to fight the spread of COVID-19, Capital One's CEO touted the availability of its "assistance" to credit card customers and promised that its agents stood ready to help. In a letter published on Capital One's website, he stated:

> We have a range of policies and programs to accommodate customer hardships. For customers who let us know they are being impacted, we are here to support and work with them. We are offering assistance to consumers and small business owners, **including waiving fees or deferring payments on credit cards** or auto loans. **Our frontline associates are well-trained and well-prepared to serve customers in times of financial stress or hardship** . . . .[16]

29.     During this same timeframe, a Capital One spokesperson stated that the relief offered could "include fee suppression, minimum payment assistance and deferred loan payments."[17] The spokesperson declared, "Capital One encourages customers who may be impacted by the coronavirus to contact customer service for a solution."[18]

30.     Capital One also advertised to customers that it would allow its customers to skip card payments without incurring interest charges (although, as one reporter observed, consumer complaints suggested that that purported assistance "didn't last long").[19]

31.     Capital One told Forbes that "**all customers will be eligible for assistance**, which will vary on the type of product they have and their individual needs."[20]

---

[16]   Press Release, *A Message from Rich Fairbank*, Capital One (Mar. 27, 2020), https://www.capitalone.com/about/newsroom/a-message-from-rich-fairbank/ (emphasis added).

[17]   Alexandria White, *Capital One cardholders may receive fee suppression and minimum payment assistance if affected by coronavirus*, CNBC (Mar. 23, 2020), https://www.cnbc.com/select/capital-one-coronavirus-assistance/.

[18]   *Id.*

[19]   Ron Lieber, *In Financial Trouble? Track Everything Companies Tell You*, N.Y. Times (May 16, 2020), https://www.nytimes.com/2020/05/16/business/coronavirus-financial-help.html.

[20]   Kelly Anne Smith, *List Of Banks Offering Relief To Customers Affected By Coronavirus (COVID-19)*, Forbes (Apr. 3, 2020), https://www.forbes.com/sites/advisor/2020/04/03/list-of-banks-offering-relief-to-customers-affected-by-coronavirus-covid-19/?sh=1874aafe4efa (emphasis added).

32.     Capital One proudly declared on its website that the company was "here to help" customers facing financial hardship as a result of the pandemic.[21]

33.     Capital One actively encouraged customers to reach out for help, stating: "We also understand that there may be instances where customers find themselves facing financial difficulties. Capital One is here to help, and we encourage customers who may be impacted or need assistance to reach out to discuss and find a solution for you."[22]

34.     Capital One's claims of its willingness to help struggling customers spread far and wide and garnered positive coverage in the media and on the Internet. For example, Capital One was included (and still is) in numerous media-published lists of banks offering assistance to customers suffering from financial hardship caused by the pandemic.[23] These reports repeated Capital One's misleading representations, claiming for example that for those facing financial difficulties, a Capital One representative would "work with you to come up with a suitable solution,"[24] that Capital One was "offering waived fees and deferred payments on credit cards for some cardholders,"[25] and that "Capital One is also including waived interest and fees in its assistance program for both personal and business cardholders."[26]

35.     In an online article glowingly titled *America's Banks Are Here to Help*, the American Bankers Association (of which Capital One is a member) proclaimed that Capital One is "[o]ffering a

---

[21]     Capital One, *Supporting Our Customers* (last visited Feb. 15, 2022), https://www.capitalone.com/updates/coronavirus/.

[22]     Capital One, *Assistance for Customers Impacted by the COVID-19 Virus Situation* (Apr. 4, 2020), https://web.archive.org/web/20200404013537/https://www.capitalone.com/updates/coronavirus/overview/.

[23]     *See, e.g.*, Kailey Hagen, *Credit Card Relief During Coronavirus*, Motley Fool (Jan. 5, 2021), https://www.fool.com/the-ascent/credit-cards/credit-card-relief-during-coronavirus/ ("You can reach out to Capital One if you are facing financial difficulties. A representative will work with you to come up with a suitable solution."); Susan Ladika & Caitlin Mims, *Credit card issuers offer cardholders relief amid coronavirus outbreak*, Creditcards.com (Jan. 11, 2021), https://www.creditcards.com/credit-card-news/credit-card-issuers-relief-coronavirus/ ("In a March 26, 2020 update, Chairman and CEO Rich Fairbank confirmed that they are offering waived fees and deferred payments on credit cards for some cardholders."); Alexandria White, *Here's our most up-to-date list of credit card financial assistance programs during coronavirus*, CNBC (last updated July 8, 2021), https://www.cnbc.com/select/credit-card-issuers-offer-customer-assistance-amid-coronavirus-financial-hardship/ ("Capital One is also including waived interest and fees in its assistance program for both personal and business cardholders.").

[24]     Hagen, *Credit Card Relief During Coronavirus*, *supra* note 23.

[25]     Ladika & Mims, *Credit card issuers offer cardholders relief amid coronavirus outbreak*, *supra* note 23.

[26]     White, *Here's our most up-to-date list of credit card financial assistance programs during coronavirus*, *supra* note 23.

number of different concessions to help customers, contingent on the product they have, including minimum payment assistance, deferred loan assistance, and fee suppression."[27] And NBC News reported that Capital One was one of a handful of banks "offering to do more" than most by "working with consumers" to offer "steps that can be taken" such as "fee suppression, minimum payment assistance and deferred loan payments."[28]

## IV.    Capital One breaks those promises.

36.    Unfortunately, Capital One's public promises did not match its actions. Despite its proclamations, the bank denied customers' requests for help on late fees and interest without making a good-faith effort to consider their requests for assistance.

37.    Ms. Fitzpatrick works as a merchandiser. She is a longtime customer of Capital One. Prior to the COVID-19 pandemic, she incurred only one or two late fees.

38.    When the pandemic hit, business shutdowns caused a dramatic reduction in her work hours because closed stores did not need merchandise stocked and restocked. This made it difficult for her to keep up with her bills. On several occasions, she had to use her credit cards, including her Capital One card, to obtain cash advances or to pay for necessities because of the financial distress she faced.

39.    In May 2020, June 2020, and May 2021, she paid the minimum payment after the due date. In each of these months, Capital One assessed a $25 late fee and then charged interest on the balance that included the late fee.

40.    During the pandemic, Ms. Fitzpatrick heard reports on television and on the radio that Capital One was promising relief from credit card late fees to customers suffering from financial hardship. Each time she was assessed a late fee, she logged in to the Capital One app on her phone to learn how to request the assistance Capital One promised. The app took her to a page on Capital One's website titled "Customer Assistance," which repeated Capital One's promise to assist

---

[27] Am. Bankers Assoc., *America's Banks Are Here to Help* (last visited Feb. 15, 2022), https://www.aba.com/about-us/press-room/industry-response-coronavirus#AlphaC.

[28] Herb Weisbaum, *Millions of Americans will soon run out of money. Here's how to deal with bills you can't pay.*, NBC News (Mar. 19, 2020), https://www.nbcnews.com/better/lifestyle/coronavirus-collateral-damage-what-do-you-do-when-paycheck-stops-ncna1163671.

**SECOND AMENDED CLASS ACTION COMPLAINT**

customers and encouraged them to contact Capital One if they were experiencing pandemic-related hardship. The page stated:

> At Capital One, the health and well-being of our customers, associates, and communities is our top priority. We understand the concern and uncertainty you may be experiencing surrounding the coronavirus (COVID-19) situation and are committed to being as responsive as possible to the needs of our customers and associates as the situation evolves.
>
> We also understand that there may be instances where customers find themselves facing financial difficulties. We encourage customers who may be impacted or need assistance to reach out.
>
> Should you find yourself in need of assistance, please contact us. We are also working to help our business customers impacted by COVID-19.
>
> As always, the health, safety, and well-being of our customers, associates, and our communities is of paramount concern. We continue to monitor this quickly evolving situation and we're here to assist our customers as needed. Please continue to check this site for relevant and timely information as the situation evolves.[29]

Just below that, in a "Frequently Asked Questions" section, Capital One stated, "My income has been impacted by the COVID-19 virus, can you help? We are here to help. If you find yourself experiencing a financial hardship, please contact us."[30] These same promises remain on Capital One's website today.[31]

41.     Each month that Capital One assessed a late fee, Ms. Fitzpatrick called the number supplied by Capital One on its "Customer Assistance" page to ask for a waiver of the fee (just as it encouraged customers to do). She spoke to three different customer service representatives. She told each representative to whom she spoke that she missed the payment due date as a result of the financial hardships caused by the COVID-19 pandemic.

42.     Despite the public promise by Capital One's CEO that the bank's "frontline associates are well-trained and well-prepared to serve customers in times of financial stress or hardship,"[32] each

---

[29] *Customer Assistance*, CapitalOne.com (last updated May 14, 2020), https://www.capitalone.com/updates/coronavirus/customer-assistance/.
[30] *Id.*
[31] *Id.*
[32] Press Release, *A Message from Rich Fairbank*, Capital One (Mar. 27, 2020), https://www.capitalone.com/about/newsroom/a-message-from-rich-fairbank/.

**SECOND AMENDED CLASS ACTION COMPLAINT**

Capital One representative denied her request without any further investigation, and each told her that there was nothing they could do.

43.     The statements by each of these Capital One representatives led Ms. Fitzpatrick to believe that Capital One had no process or program for considering or granting relief for its credit card customers related to the financial difficulties caused by specifically COVID-19, despite the explicit promises Capital One had made about COVID-19 directed relief. Instead, it seemed that Capital One had not, in fact, set up any relief for pandemic related difficulties beyond its already existing fee exemption program. Indeed, the representatives' statements indicated that there was no program in place to actually consider a customer's pandemic-related need and grant appropriate relief. Instead, customers calling for exactly the sort of relief that Capital One promised to provide were routinely denied such relief.

44.     Had Ms. Fitzpatrick known that Capital One did not intend to keep its promises to use its discretion to grant customers relief from credit card late fees during the pandemic, she would have used another card to try to ensure that she would avoid such fees. But because of Capital One's promises to help, she did not believe that using another card was necessary.

45.     Capital One's course of conduct toward Ms. Fitzpatrick during the pandemic flouted the discretion in the Credit Card Agreement and directly contradicted its representations in the media and online. Capital One exercised the contractual discretion to waive late fees and interest it retained in the Credit Card Agreement dishonestly and in bad faith because it never meaningfully *considered* her requests for assistance at all. Despite Capital One's widely publicized promise that "all customers" would be eligible for relief, Capital One's representatives told her that she was "ineligible" for help because there was nothing that they could do. And despite Capital One's oft-repeated claim that its representatives would "work" with customers to come up with a "suitable solution," none of the representatives with whom she spoke made any effort to work with her.

46.     Ms. Fitzpatrick closed her credit card account with Capital One because of its broken promise to provide relief from late fees assessed against her account. If she knew that Capital One

**SECOND AMENDED CLASS ACTION COMPLAINT**

would abide by its promises and exercise its discretion fairly in the future, she would once again open a credit card with Capital One.

47.     Experiences like Ms. Fitzpatrick's demonstrate that Capital One's claims of willingness to help its credit card was a publicity play. In practice, the bank continued to place profits over people, rejecting customers' requests for assistance without ever actually considering those requests or exercising the discretion it gave itself to provide the promised assistance with late fees and interest. Because Capital One failed to refund fees upon request and did not set up a system that would allow customer service representatives to do so, these promises were likely to deceive reasonable customers into believing that they could get their account fees refunded during the COVID-19 pandemic.

## **CLASS ALLEGATIONS**

48.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Ms. Fitzpatrick brings this action on behalf of herself and all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

49.     The proposed classes are defined as follows:

> **Nationwide class:** All Capital One consumer credit card holders in the United States who, after March 23, 2020, were charged late fees or interest by Capital One, attempted to seek a refund, and did not receive a refund for such fees or interest.

> **Alternative California-only class:** All Capital One consumer credit card holders in California who, after March 23, 2020, were charged late fees or interest by Capital One, attempted to seek a refund, and did not receive a refund for such fees or interest.

50.     Ms. Fitzpatrick reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

51.     Excluded from the Class are Capital One, its parents, subsidiaries, affiliates, officers and directors, any entity in which Capital One has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

52.     The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Capital One's records.

53.     Ms. Fitzpatrick's claims are typical of the claims of other Class members. They are governed by the same contractual terms and arise out of the same dishonest promises by Capital One to provide assistance and the same subsequent wrongful policies and practices of denying assistance. Ms. Fitzpatrick has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

54.     Ms. Fitzpatrick, like all Class members, was denied the benefit of her contract with Capital One when it promised to exercise its discretion to charge or waive late fees and interest on unpaid balances during the COVID-19 pandemic, and then refused to even consider requests to waive or refund such fees or interest amounts. Ms. Fitzpatrick, like all Class members, has been damaged by Capital One's misconduct in that she has been denied the benefit of her contract with Capital One through the unfair imposition of late fees and interest, to Capital One's profitable benefit, despite the promise to exercise discretion in the choice to charge or waive such fees and interest. Furthermore, the factual basis of Capital One's misconduct is common to all Class members and represents a common thread of refusal to exercise its discretion fairly, resulting in injury to all members of the Classes.

55.     Ms. Fitzpatrick's claims are also typical in that Capital One made misrepresentations to her and to all members of the Classes when it promised to consider requests for assistance with late fees and interest on unpaid balances, and then refused to do so. Ms. Fitzpatrick, like all class members, has been harmed by these wrongful business practices.

56.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

57.     Among the questions of law and fact common to the Classes are:

a.   Whether Capital One breached its covenant of good faith and fair dealing with Ms. Fitzpatrick and other members of the Classes through its policies and practices;

b.   Whether Capital One was unjustly enriched through its policies and practices;

c.   Whether Capital One violated the California Unfair Competition Law through its fraudulent misrepresentations;

d.   The proper method or methods by which to measure damages; and

e.   Whether the Classes are entitled to declaratory and injunctive relief.

58.   Ms. Fitzpatrick is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, she is an adequate representative and will fairly and adequately protect the interests of the Classes.

59.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Capital One, few Class members could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Capital One's misconduct will proceed without remedy.

60.   Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

61.   Ms. Fitzpatrick knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

**SECOND AMENDED CLASS ACTION COMPLAINT**

**COUNT I**
**Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and all Classes)**

62.     Ms. Fitzpatrick repeats paragraphs 1 through 61 above.

63.     Ms. Fitzpatrick and Capital One have contracted for credit card services, as embodied in Capital One's Credit Card Agreement and related documentation.

64.     Under the laws of California, Virginia, and the states in which Capital One does business, good faith is an element of every contract pertaining to the assessment of late fees and interest on unpaid balances. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form, in order to ensure that both parties receive the benefits of the bargain. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

65.     A party to a contract violates the obligation of good faith in performance by exercising discretion reserved to it solely in its own favor, and contrary to the benefit and reasonable expectations of the other party, exercising it with a bad motive, exercising it dishonestly, or otherwise exercising it in bad faith. Doing so exploits the discretion to their benefit, particularly when, as here, the party exercising the discretion drafted the contract—thus reserving the discretion to itself—and exercises that discretion consistently against the benefit of a less powerful, less sophisticated consumer. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of the power to specify terms.

66.     Capital One has a contract with Ms. Fitzpatrick and the Classes (the Credit Card Agreement). This contract of adhesion vests a discretionary power in Capital One to charge, waive, or refund late fees and interest on credit card balances for which the cardholder made a payment that was after the due date or below the minimum balance.

67.     Capital One has breached the covenant of good faith and fair dealing in the Credit Card Agreement through its late fee and interest policies and practices as alleged herein, because it failed to exercise this discretion fairly, honestly, and to the benefit of its customers. Instead, Capital One exercised its discretion in bad faith and dishonestly.

68.     Capital One's Credit Card Agreement states that Capital One "may charge" a late payment fee "if we do not receive your payment as instructed on your Statement by the payment due date" and "may take certain actions," including continuing to charge interest and fees, if an account "balance remains outstanding." The Credit Card Agreement also states elsewhere that Capital One "may give you offers that allow you to pay less than the total balance and avoid Interest Charges on new purchase Segment transactions." These provisions give Capital One discretion to assess or waive late fees and interest.

69.     Rather than use this discretion to provide relief to customers suffering from financial hardship during the pandemic as promised, Capital One instead exercised its discretion in its own favor. In doing so, Capital One has unfairly interfered with Ms. Fitzpatrick's and the Classes' right to receive the benefits of the contract.

70.     Ms. Fitzpatrick and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Credit Card Agreement.

71.     Ms. Fitzpatrick and members of the Classes have sustained damages from Capital One's breach of the contractual covenant of good faith and fair dealing.

**COUNT II**
**Unjust Enrichment**
**(On Behalf of Plaintiff and all Classes)**

72.     Ms. Fitzpatrick pleads this claim in the alternative. Ms. Fitzpatrick repeats paragraphs 1 through 71 above.

73.     Ms. Fitzpatrick, on behalf of herself and the Classes, asserts a common law claim for unjust enrichment.

**SECOND AMENDED CLASS ACTION COMPLAINT**

74.     By means of Capital One's wrongful conduct alleged herein, Capital One knowingly provided credit card services to Ms. Fitzpatrick and members of the Classes that were unfair, unconscionable, and oppressive.

75.     Capital One, by promising to provide assistance in the form of waiving or refunding late fees and interest payments, should reasonably have expected to repay Ms. Fitzpatrick and members of the Classes those benefits.

76.     Capital One knowingly received and retained wrongful benefits and funds from Ms. Fitzpatrick and members of the Classes. In so doing, Capital One acted with conscious disregard for the rights of Ms. Fitzpatrick and members of the Classes.

77.     As a result of Capital One's wrongful conduct as alleged herein, Capital One has been unjustly enriched at the expense of, and to the detriment of, Ms. Fitzpatrick and members of the Classes.

78.     Capital One's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

79.     Under the common law doctrine of unjust enrichment, it is inequitable for Capital One to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of late fees and interest on Ms. Fitzpatrick and members of the Classes in an unfair, unconscionable, and oppressive manner. Capital One's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

80.     The financial benefits derived by Capital One rightfully belong to Ms. Fitzpatrick and members of the Classes. Capital One should be compelled to disgorge in a common fund for the benefit of Ms. Fitzpatrick and members of the Classes all wrongful or inequitable proceeds received by it. A constructive trust should be imposed upon all wrongful or inequitable sums received by Capital One traceable to Ms. Fitzpatrick and the members of the Classes.

81.     Ms. Fitzpatrick and members of the Classes have no adequate remedy at law.

**SECOND AMENDED CLASS ACTION COMPLAINT**

82.     Ms. Fitzpatrick and the Class may be entitled to disgorgement of profits in the alternative to damages, which may impose more stringent elements. In addition, relative to damages, disgorgement may be more certain, prompt, or efficient than the monetary damages sought.

### COUNT III
### California Unfair Competition Law Business and Professions Code § 17200
### (On Behalf of Plaintiff and the California Class)

83.     Ms. Fitzpatrick repeats paragraphs 1 through 82 above.

84.     Capital One's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq.*

85.     The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

86.     By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable and sweeps within its scope acts and practices not specifically proscribed by any other law.

87.     Ms. Fitzpatrick and the California Class bring this claim under the third prong, that of "fraudulent business act or practice."

88.     Capital One committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when affirmatively and knowingly misrepresenting that it would waive credit card late fees and interest on unpaid balances. Such representations are likely to mislead the public.

89.     As a direct and proximate result of Capital One's violations of the UCL's "deceptive" prong, Ms. Fitzpatrick and members of the California Class have been, and will continue to be, charged excessive late fees and interest, and thereby have suffered and will continue to suffer actual damages.

90.     Ms. Fitzpatrick and the California Class will suffer future harm so long as Capital One continues to falsely claim that it will consider, and provide, refunds or waivers to customers who have been financially impacted by the COVID-19 pandemic and make requests for such refunds or waivers.

91.     Ms. Fitzpatrick and the California Class request equitable relief to restore to them all money acquired by means of Capital One's unlawful conduct, an injunction on behalf of the general public to prevent Capital One from continuing to misrepresent its fee and waiver practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

92.     Ms. Fitzpatrick and the California Class have no adequate remedy at law.

93.     Legal remedies would not protect Ms. Fitzpatrick and the California Class from the continued harm caused by Capital One's misrepresentations and omissions. Even if consumers like Ms. Fitzpatrick become aware of Capital One's misrepresentations and omissions, they are still at risk because they may reasonably, but incorrectly, assume that the misrepresentations and omissions had been corrected.

94.     Ms. Fitzpatrick and the Class may also be entitled to restitutionary relief in the alternative to damages, which may impose more stringent elements. In addition, relative to damages, restitution may be more certain, prompt, or efficient than the monetary damages sought.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Fitzpatrick and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.      Granting an injunction requiring Capital One to disclose the actual circumstances under which refunds will be provided to all its customers;

2.      Granting an injunction requiring Capital One to set up a system that will allow refunds to be granted, including requiring the issuance of refunds when a fee was incurred due to circumstances related to the COVID-19 pandemic;

3.      Restitution of all Capital One late fees and interest on unpaid balances paid to Capital One by Ms. Fitzpatrick and members of the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

4.      Disgorgement of the ill-gotten gains derived by Capital One from its misconduct;

5.      Actual damages in an amount according to proof;

6.      Pre-judgment interest at the maximum rate permitted by applicable law;

7.      Costs and disbursements assessed by Ms. Fitzpatrick in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.      Such other relief as this Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Ms. Fitzpatrick and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: May 27, 2022                                              Respectfully submitted,

Hassan A. Zavareei (CA Bar No. 181547)
Andrea R. Gold*
Lauren Kuhlik*
Glenn E. Chappell*
**TYCKO & ZAVAREEI LLP**
1828 L Street NW Suite 1000
Washington, DC 20036
(202) 973-0900
*hzavareei@tzlegal.com*
*agold@tzlegal.com*
*lkuhlik@tzlegal.com*
*gchappell@tzlegal.com*

Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway., Suite 1070
Oakland, CA  94612
(510) 254-6808
*apersinger@tzlegal.com*

*Attorneys for Plaintiff and the Proposed Classes*
*admitted pro hac vice*

**SECOND AMENDED CLASS ACTION COMPLAINT**