Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
(510) 254-6808
*apersinger@tzlegal.com*

Hassan A. Zavareei (CA Bar No. 181547)
Andrea R. Gold*
Lauren Kuhlik*
Glenn E. Chappell*
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
(202) 973-0900
*hzavareei@tzlegal.com*
*agold@tzlegal.com*
*lkuhlik@tzlegal.com*
*gchappell@tzlegal.com*

*Counsel for the Plaintiff and the Proposed Classes*

*admitted pro hac vice

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| TANYA FITZPATRICK, *an individual, on behalf of herself and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>CAPITAL ONE BANK (USA), N.A.,<br><br>Defendant. | Civil Case No. 2:22-cv-00312-MCE-DB<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date: July 21, 2022<br>Time: 2:00 p.m.<br>Place: Courtroom 7, 14th floor<br>Judge: Honorable Morrison C. England, Jr. |

# <u>TABLE OF CONTENTS</u>

PAGE

I.    INTRODUCTION ................................................................................................................1

II.   LEGAL STANDARD ........................................................................................................4

III.  ARGUMENT ....................................................................................................................5

    A.  The Court should disregard the extraneous factual material attached to and cited in the Motion to Dismiss. ..........................................................................5

    B.  Each of Capital One's arguments related to Ms. Fitzpatrick's claim for violation of the UCL fails. ...............................................................................5

        1.  The SAC pleads Capital One's false representations, and Plaintiff's reliance on them, with ample particularity...............................................................6

        2.  The SAC pleads cognizable harm..................................................................9

        3.  It's premature to dismiss Plaintiff's equitable claims based on the existence of an adequate remedy at law. ...........................................................10

        4.  Plaintiff has standing to pursue injunctive relief. ......................................12

    C.  The Complaint states a claim for breach of the implied covenant of good faith and fair dealing...........................................................................................13

        1.  The pleading stage is not the proper place to resolve choice of law issues. ......................15

        2.  The SAC pleads a breach of the implied covenant under Virginia law. ...........................15

    D.  The Complaint states an unjust enrichment claim...........................................19

IV.  CONCLUSION ...............................................................................................................20

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*
No. 2:17-cv-1515-KJM-AC, 2020 WL 3893395 (E.D. Cal. July 10, 2020) ................................... 13

*Andino v. Apple, Inc.*
No. 2:20-cv-1628-JAM-AC, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ................................... 13

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................................................................ 5

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................................................................................ 4

*Boobuli's LLC, v. State Farm Fire and Casualty Co.*
No. 20-CV-07074-WHO, 2021 WL 7160671 (N.D. Cal. Oct. 5, 2021) ...................................... 14

*Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*
466 S.E.2d 382 (Va. 1996) ............................................................................................................. 16, 17

*Coleman v. Mondelez Int'l Inc.*
554 F. Supp. 3d 1055 (C.D. Cal. 2021) ........................................................................................ 11, 12

*Davidson v. Apple, Inc.*
No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ......................................... 15

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) .............................................................................................................. 12

*Delman v. J. Crew Grp., Inc.*
No. CV 16-9219-MWF (ASX), 2017 WL 3048657 (C.D. Cal. May 15, 2017) ............................... 7

*Deras v. Volkswagon Group of Amer. Inc.*
No. 17-cv-5452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) ........................................... 12

*Docena v. Navy Fed. Credit Union*
No. 315CV00184LRHWGC, 2016 WL 53826 (D. Nev. Jan. 4, 2016).......................................... 18

*Dress v. Cap. One Bank (USA), N.A.*
No. 1:19-CV-00343, 2019 WL 3451304 (E.D. Va. July 30, 2019) ................................................ 18

*Ellsworth v. U.S. Bank, N.A.*
908 F. Supp. 2d 1063 (N.D. Cal. 2012) ........................................................................................ 14

*Enomoto v. Space Adventures, Ltd.*
624 F. Supp. 2d 443 (E.D. Va. 2009) ......................................................................................... 17, 18

*Fludd v. S. State Bank*
No. 2:20-CV-1959-BHH, 2021 WL 4691587 (D.S.C. Oct. 7, 2021) .......................................... 14, 16

*Frank Brunckhorst Co. v. Coastal Atlantic, Inc.*
    542 F. Supp. 2d 452 (E.D. Va. 2008) ................................................................................. 20

*Frank H. Cobb, Inc. v. Cooper Companies, Inc.*
    No. 89 CIV. 5323 (MGC), 1992 WL 77600 (S.D.N.Y. Mar. 23, 1992) ............................ 8

*Freeman v. Indochino Apparel, Inc.*
    443 F. Supp. 3d 1107 (N.D. Cal. 2020) ............................................................................. 20

*Friedman v. AARP, Inc.*
    855 F.3d 1047 (9th Cir. 2017) .............................................................................................. 5

*Golden v. Home Depot, U.S.A, Inc.*
    No. 118CV00033LJOJLT, 2018 WL 2441580 (E.D. Cal. May 31, 2018) .......................... 5

*Gonzalez v. Drew Indus. Inc.*
    No. CV0608233DDPJWJX, 2009 WL 10671688 (C.D. Cal. Aug. 26, 2009) .................... 8

*Gutierrez v. Wells Fargo & Co.*
    622 F. Supp. 2d 946 (N.D. Cal. 2009) ......................................................................... 14, 16

*Hatfield v. Halifax PLC*
    564 F.3d 1177 (9th Cir. 2009) ............................................................................................ 15

*Hernandez v. Mesa*
    137 S. Ct. 2003 (2017) .......................................................................................................... 4

*Hershfang v. Citicorp*
    767 F. Supp. 1251 (S.D.N.Y. 1991) ..................................................................................... 8

*Hoang v. Bank of Am., N.A.*
    910 F.3d 1096 (9th Cir. 2018) .............................................................................................. 4

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................................... 20

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) ................................................................................ 14, 16

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*
    299 F.R.D. 648 (S.D. Cal. 2014) ......................................................................................... 9

*In re Tobacco II Cases*
    207 P.3d 20 (Cal. 2009) ....................................................................................................... 8

*Johnson-Jack v. Health-Ade LLC*
    No. 21-cv-7895-LB, --F.Supp.3d--, 2022 WL 562827 (N.D. Cal. Feb. 24, 2022) .......... 13

*Junhan Jeong v. Nexo Financial LLC*
    No. 21-cv-2392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ................................. 12

*Kasky v. Nike Inc.*
    27 Cal. 4th 939 (2002) ......................................................................................................... 2

*Khoja v. Orexigen Therapeutics, Inc.*
  899 F.3d 988 (9th Cir. 2018) ................................................................................................ 4

*Krause-Pettai v. Unilever U.S., Inc.*
  No. 20cv1672 DMS (BLM), 2021 WL 1597931 (S.D. Cal. April 23, 2021) ............................ 11, 12

*Ladore v. Sony Computer Ent. Am., LLC*
  75 F. Supp. 3d 1065 (N.D. Cal. 2014) ................................................................................... 5

*Lambert v. Navy Federal Credit Union*
  2019 WL 3843064 (E.D. Va. Aug. 14, 2019) ........................................................................ 17

*Lyles v. Sangadeo-Patel*
  171 Cal. Rptr. 3d 34 (Cal. Ct. App. 2014) ........................................................................... 19

*Maloney v. Scottsdale Ins. Co.*
  256 F. App'x 29 (9th Cir. 2007) ......................................................................................... 20

*Mawyer v. Atl. Union Bank*
  No. 3:21CV726 (DJN), 2022 WL 1049311 (E.D. Va. Apr. 7, 2022) ...................................... 15

*Mirkin v. Wasserman*
  5 Cal. 4th 1082 (Cal. 1993) ................................................................................................. 8

*Nacarino v. Chobani, LLC*
  No. 20-cv-7437-EMC, 2022 WL 344966 (N.D. Cal. Feb. 4, 2022) ..................................... 11

*Nayab v. Capital One Bank (USA), N.A.*
  942 F.3d 480 (9th Cir. 2019) ............................................................................................... 4

*Nguyen v. Barnes & Noble Inc.*
  No. SACV12812JLSRNBX, 2015 WL 12766050 (C.D. Cal. Nov. 23, 2015) ......................... 15

*Obertman v. Electrolux Home Care Prod., Inc.*
  482 F. Supp. 3d 1017 (E.D. Cal. 2020) ........................................................................... 19, 20

*Paduano v. Am. Honda Motor Co.*
  88 Cal. Rptr. 3d 90 (Cal. Ct. App. 2009) ............................................................................. 7

*Parino v. BidRack, Inc.*
  838 F. Supp. 2d 900 (N.D. Cal. 2011) ................................................................................ 19

*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes*
  139 Cal. App. 4th 1006 (2006) ............................................................................................. 2

*Pfahning v. Cap. One Bank (USA), N.A.*
  No. 1:19-CV-950, 2019 WL 13167182 (E.D. Va. Dec. 5, 2019) ...................................... 18, 19

*Pizana v. SanMedica Int'l LLC*
  No. 1:18-cv-644-DAD-SKO, 2019 WL 4747947 (E.D. Cal. Sept. 30, 2019) ........................ 13

*RBB2, LLC v. CSC ServiceWorks, Inc.*
  2019 WL 1170484 (E.D. Cal. Mar. 13, 2019) ..................................................................... 20

*Rothman v. Equinox Holdings, Inc.*
   No. 2:20-cv-9670-CAS-MRWx, 2021 WL 1627490 (C.D. Cal. April 27, 2021)............................ 11

*Sagastume v. Psychemedics Corp.*
   No. CV 20-6624 DSF (GJSx), 2020 WL 8175597 (C.D. Cal. Nov. 30, 2020) .............................. 12

*Sonner v. Premier Nutrition Corp.*
   971 F.3d 834 (9th Cir. 2020) ....................................................................................................... 11

*Southland Sod Farms v. Stover Seed Co.*
   108 F.3d 1134 (9th Cir. 1997) ....................................................................................................... 7

*Stewart v. Kodiak Cakes, LLC*
   537 F. Supp. 3d 1103 (S.D. Cal. 2021) ........................................................................................ 13

*Stoney Glen, LLC v. S. Bank & Tr. Co.*
   944 F. Supp. 2d 460 (E.D. Va. 2013) ........................................................................................... 16

*Swift v. BancorpSouth, Inc. (In re Checking Account Overdraft Litig.)*
   No. 1:09-MD02036-JLK, 2013 U.S. Dist. LEXIS 154432 (S.D. Fla. Oct. 24, 2013).................... 16

*Va. Vermiculite, Ltd. v. W.R. Grace & Co.–Conn.*
   156 F.3d 535 (4th Cir. 1998) ....................................................................................................... 16

*White v. Wachovia Bank, N.A.*
   563 F. Supp. 2d 1358 (N.D. Ga. 2008) ........................................................................................ 17

*Williams v. Gerber Prods. Co.*
   552 F.3d 934 (9th Cir. 2008) ........................................................................................................ 2

## I.     INTRODUCTION

In this nationwide class action, Plaintiff Tanya Fitzpatrick, a California resident, asserts straightforward claims against one of the nation's largest and most powerful banks, Capital One Bank (USA), N.A. ("Capital One"). Capital One moves to dismiss the entirety of her Second Amended Complaint ("SAC") but fails to meet its burden of showing that dismissal is appropriate. *See* Dkt. 25, ("Mot.").

In her Second Amended Class Action Complaint ("SAC"), Ms. Fitzpatrick alleges that in March, April, and May 2020—in the midst of the deadly COVID-19 pandemic and ensuing economic crisis—Capital One promised on its website that it was "here to help" customers facing financial hardship as a result of the "coronavirus (COVID-19) situation." SAC ¶¶ 4, 32, 40. Specifically, Capital One's website promises that if a consumer's "income ha[d] been impacted by the COVID-19 virus," then a customer need only contact Capital One to obtain help. *Id.* at ¶ 40. Indeed, on its website and mobile app, Capital One includes a multi-paragraph statement promising that it is "committed" to helping provide relief for financial difficulties related to COVID-19. *See id.* Capital One also told the media that "all customers will be eligible for assistance, which will vary on the type of product they have and their individual needs." *Id.* ¶ 31.

With these and other similar representations, Capital One deceived reasonable consumers like Ms. Fitzpatrick into believing that, if she experienced COVID-related financial hardship and contacted Capital One, then Capital One would provide relief from discretionary fees it charged. *Id.* ¶¶ 6-8, 40-45. Indeed, Capital One's credit card agreement grants Capital One discretion to either assess or waive credit card late fees and interest when a consumer does not make the minimum payment by the due date, telling Ms. Fitzpatrick that Capital One "may charge" such fees and "may . . . continue to charge" interest on overdue balances as long as the "balance remains outstanding." *Id.* ¶¶ 20-21. The unmistakable gravamen of these representations was that Capital One had set up a program to consider and grant relief to customers suffering economic hardship due to the pandemic.

Ms. Fitzpatrick alleges, however, that Capital One did not establish any such program and that these representations and promises were at best misleading and at worse patently false. In truth, Capital One did not provide any assistance to accountholders like Ms. Fitzpatrick related to COVID-19

1   beyond the relief available before the pandemic. *See id.* ¶¶ 6-8, 40-45. Thus, despite Capital One's

2   statements that Ms. Fitzpatrick need only call Capital One and cite COVID-19 hardship to obtain

3   relief, Capital One representatives denied her request for relief from the discretionary late fees that

4   Capital One charged her. Instead, without any further investigation into her circumstances due to

5   COVID-19, each Capital One representative told her that there was nothing they could do. *See id.*

6         Accordingly, Ms. Fitzpatrick brings a claim on behalf of similarly situated California

7   accountholders for violation of the UCL and claims on behalf of similarly situated accountholders

8   nationwide for breach of the covenant of good faith and fair dealing, and for unjust enrichment.

9         First, with respect to Ms. Fitzpatrick's claim under the UCL, none of Capital One's arguments

10   are persuasive. Ms. Fitzpatrick identifies the statements about COVID relief on Capital One's website

11   that she saw and was deceived by. Contrary to Capital One's arguments, she thus complies with Rule

12   9(b)'s pleading requirements because she pleads the who, what, when, where, and why of Capital

13   One's deception. While Capital One disputes that Ms. Fitzpatrick was reasonably deceived by the

14   statements she alleges she saw on Capital One's website—including promises that it would help

15   customers experiencing hardship from COVID-19—that argument raises issues of fact that are

16   inappropriate for decision here. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

17         And, even if the Court were to accept Capital One's assertion that it made it no affirmatively

18   false statement on its website promising relief from late fees like Ms. Fitzpatrick incurred, such a

19   finding would not save Capital One. That's because Capital One's statements about COVID relief

20   that Ms. Fitzpatrick saw and relied on are *misleading and confusing*.  Representations may be misleading,

21   but not technically false, if they have a likelihood or tendency to deceive or confuse the public. *People*

22   *ex rel. Dept. of Motor Vehicles v. Cars 4 Causes*, 139 Cal. App. 4th 1006, 1016 (2006) (quoting *Kasky v. Nike*

23   *Inc.*, 27 Cal. 4th 939, 951 (2002)). Since Ms. Fitzpatrick adequately pleads that Capital One's statements

24   on its website about the availability of COVID help were misleading and confusing, Capital One's

25   argument that she must plead that it made a blanket promise to waive late fees must be rejected. Stated

26   otherwise, Capital One incorrectly claims that she must plead an affirmatively false statement, when

27   in fact, Capital One's statements could be technically true, but still confusing and misleading in

28   violation of the UCL.

1   Capital One's attempt to argue that equitable relief (restitution and injunctive relief) is not

2   available to Ms. Fitzpatrick under the UCL because she supposedly has an adequate remedy at law

3   fails too. She seeks restitution pursuant to her UCL claim in the alternative because it is unclear at this

4   early stage whether she will prevail on her claim for damages (under her theory of breach of the implied

5   covenant). Dismissing Ms. Fitzpatrick's request for restitution at the pleading stage would be

6   premature and would artificially restrict her relief before further proceedings determine whether an

7   adequate remedy at law is available.

8   Ms. Fitzpatrick also has standing to seek injunctive relief under the UCL.  Although she closed

9   her credit card account with Capital One because of its dishonest promises to provide relief, she also

10  alleges that she wants to keep doing business with Capital One and would reopen a credit card account

11  with the bank if she knew that it would exercise its discretion to assess late fees and interest in good

12  faith (and as promised). Under well-established Ninth Circuit precedent, this gives her standing to

13  seek an injunction. In short, each one of Capital One's arguments with respect to the UCL fails.

14  Ms. Fitzpatrick also brings a claim for breach of the implied covenant of good faith and fair

15  dealing embedded in every contract. A party vested with discretion to charge fees must exercise it in

16  good faith and according to the reasonable expectations of the other party. Here, a reasonable person

17  like Ms. Fitzpatrick would expect Capital One to exercise its discretion in her favor if (1) a global

18  pandemic caused an economic crisis for millions, (2) the fees were condemned by regulatory agencies

19  as exacerbating the pandemic's financial impact, (3) Capital One continued to realize high profits

20  during the pandemic, and (4) Capital One proclaimed that it would waive those fees. SAC ¶¶ 1, 3-5,

21  24-26-35. But Capital One exercised its discretion solely in its own favor. It did not set up the relief

22  program(s) it promised and instead denied representatives the ability even to consider Ms. Fitzpatrick's

23  requests for relief. *E.g.*, *id.* ¶ 42. Ms. Fitzpatrick also asserts a claim for unjust enrichment because

24  Capital One derived financial benefits from its promises to provide relief and subsequent denial of

25  that relief, and it is inequitable for Capital One to retain those ill-gotten benefits. *Id.* ¶¶ 72-82.

26  These allegations are more than enough to allow the case to proceed. Capital One's Motion

27  to Dismiss, which is rife with factual assertions beyond the four corners of the pleadings, does not

28  identify a proper basis for dismissal of any claim.

1    As to Ms. Fitzpatrick's good faith and fair dealing claim, Capital One assumes, based on a

2    choice of law clause in its contract, that Virginia law applies, but it is premature to decide choice of

3    law on the pleadings in a complex class action bringing claims on behalf of a nationwide class. In any

4    event, Ms. Fitzpatrick states a claim under Virginia law. The implied covenant of good faith and fair

5    dealing applies in Virginia, and the SAC's allegations establish that Capital One exercised its

6    contractual discretion in bad faith. Moreover, even if Capital One's grant of discretion to itself is cast

7    as a nondiscretionary contractual *right*, the SAC still states a claim. Virginia law holds that where a

8    contract grants one party a right to do something, the implied covenant prohibits the party from

9    exercising that right dishonestly. That's exactly what the SAC alleges Capital One did by promising to

10   refund late fees and interest on overdue balances for customers experiencing pandemic-related

11   financial hardship but then denying Ms. Fitzpatrick's requests without meaningfully considering them.

12   Ms. Fitzpatrick's alternatively pleaded unjust enrichment claim is also permissible. A plaintiff

13   may plead an unjust enrichment claim premised on misleading conduct alongside a contract claim,

14   even if a valid, express contract covers the subject matter. That's the case here because even if Capital

15   One didn't run afoul of the implied covenant in its agreement (it did), the allegations plausibly establish

16   that Ms. Fitzpatrick is nevertheless entitled to an equitable remedy because Capital One's

17   misrepresentations caused her harm in the absence of any contractual breach.

18   For all these reasons, the Court should deny the Motion.

19   **II.    LEGAL STANDARD**

20   The Federal Rules of Civil Procedure require "only a short and plain statement of the claim

21   showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the

22   claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

23   (cleaned up). At the pleading stage, the Court must "accept[] the allegations in the complaint as true."

24   *Hernandez v. Mesa*, 137 S. Ct. 2003, 2005 (2017). It must construe the allegations in the light most

25   favorable to the nonmoving party. *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir.

26   2019). It must "draw all reasonable inferences in favor of the nonmoving party." *Hoang v. Bank of Am.,

27   N.A.*, 910 F.3d 1096, 1100 (9th Cir. 2018). And it may not resolve factual disputes. *Khoja v. Orexigen

28   Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

To survive a motion to dismiss, a plaintiff must only allege enough facts to state a claim to relief that is plausible on its face. *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017). A claim is plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## III.   ARGUMENT

### A.   The Court should disregard the extraneous factual material attached to and cited in the Motion to Dismiss.

As an initial matter, the Motion is rife with factual assertions beyond the four corners of the pleadings, including a "background" section and two declarations arguing Capital One's position on the merits. *See, e.g.*, Mot. 3-5 (proffering extraneous, disputed, and unproven assertions concerning Capital One's purported hardship programs and details concerning the closure of Ms. Fitzpatrick's account, all based on improperly attached declarations); Dkts. 25-1, 25-16 (extraneous declarations). None of these materials are integral to the Complaint. It would be "inappropriate" for the Court to accept a defendant's "factual claim" or prejudge the merits at the pleading stage. *Ladore v. Sony Computer Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1072 (N.D. Cal. 2014) (rejecting defendant's attempt to "read allegations into [plaintiff]'s pleading that are not there"). The Court should either ignore these inappropriate allegations or convert the motion to one for summary judgment and defer ruling until discovery is completed. *Cf. Golden v. Home Depot, U.S.A, Inc.*, No. 118CV00033LJOJLT, 2018 WL 2441580, at *3 (E.D. Cal. May 31, 2018) (declining to convert motion to dismiss into motion for summary judgment because it was "premature" to rule on summary judgment before discovery was conducted and plaintiff could develop facts to oppose the motion).

### B.   Each of Capital One's arguments related to Ms. Fitzpatrick's claim for violation of the UCL fails.

Ms. Fitzpatrick has stated a claim under the deceptive prong of the UCL. First, she pleads both the content of Capital One's false representations and her reliance thereon with particularity. Capital One's claims on its own website falsely promised to help customers facing COVID-related hardship. Contrary to Capital One's argument, these representations, which include several paragraphs explaining that Capital One is "committed" to providing help for those impacted by financial difficulties stemming from COVID-19, did deceive customers into believing that Capital One would

set up a system by which it would meaningfully consider requests for relief from Capital One's penalty charges. *See* SAC ¶ 40. Second, Ms. Fitzpatrick alleged cognizable harm. Capital One argues that she did not see the relevant misrepresentations and that any representations made to the press cannot be imputed to it. To the contrary, Ms. Fitzpatrick saw Capital One's commitment to COVID-help on its own website before incurring at least two of the three late fees alleged in the SAC, and she relied on these promises to her detriment when she continued to use her credit card. And the statements to the press were likewise controlled by Capital One, allowing liability to attach to those statements as well. Third, Capital One argues that Ms. Fitzpatrick may have an adequate remedy at law, but it is premature to dismiss equitable claims based on this possibility at the pleading stage. Finally, Ms. Fitzpatrick has standing to pursue her injunctive-relief claim. Although she alleged that she closed her credit card account, she would reopen the credit card account if Capital One were to cease its deceptive practices, and she therefore is at risk of future harm absent an injunction.

1.      **The SAC pleads Capital One's false representations, and Plaintiff's reliance on them, with ample particularity.**

Capital One claims that Ms. Fitzpatrick fails to allege a UCL claim because she "did not see any deceptive statements made by Capital One." Mot. 11 (heading capitalization omitted). This is wrong: Ms. Fitzpatrick alleges she saw Capital One's exhortation on its website for customers suffering financial hardship to "reach out" because it was "here to help" customers "experiencing a financial hardship." SAC ¶ 40 (quoting extensive false promises explaining that Capital One is "committed" to providing pandemic-related assistance that Ms. Fitzpatrick alleges she viewed on the Capital One smart phone app and that appears on Capital One's website). In addition to the direct representations that she saw on the Capital One app, Ms. Fitzpatrick further alleges that she "heard reports on television and on the radio that Capital One was promising relief from credit card late fees to customers suffering from financial hardship." *Id.* The allegations pertaining to these statements independently and collectively satisfy Rule 9(b)'s pleading requirements.

First, Ms. Fitzpatrick detailed the statement on Capital One's website down to the precise words used, which satisfies any particularity requirement. Capital One tries to argue that the statement on the website promising help to consumers suffering COVID hardships if they contacted Capital

One is not an explicit "promise to 'waive credit card late fees' that had already been charged." Mot. 11-12. But this is an unduly narrow characterization. Under California law, a statement can even be true and still be deceptive, confusing, and misleading to the public. Thus, "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL." *Paduano v. Am. Honda Motor Co.*, 88 Cal. Rptr. 3d 90, 104 (Cal. Ct. App. 2009) (internal quotations omitted). As the Ninth Circuit explained in *Southland* when discussing falsity under the Lanham Act, a statement "must always be analyzed in its full context" to assess its truth or deceitfulness. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). The statutory context is different here than with the Lanham Act at issue in *Southland*, but the principle is the same. *See Delman v. J. Crew Grp., Inc.*, No. CV 16-9219-MWF (ASX), 2017 WL 3048657, at *7 (C.D. Cal. May 15, 2017) (explaining, when assessing UCL claim: "The question is not what meaning a neutral third-party might give to the word 'value' standing on its own. The question is how a reasonable consumer would interpret the phrase 'Valued At' in the context of the specific commercial interaction that Plaintiff has challenged.").

Here, Capital One's claims about the availability of help from Capital One for hardship related to COVID-19 deceived and confused California accountholders, including Ms. Fitzpatrick, into believing that Capital One would grant relief from discretionary charges by Capital One, such as late fees. SAC ¶¶ 27-33. In that regard, the website said Capital One was "here to assist our customers *as needed.*" *Id.* ¶ 40 (emphasis added). The message Capital One conveyed was that it was "committed" to all consumers in need of help, such that all they had to do was call to call if they found themselves "in need of assistance" due to COVID-19. *Id.* Indeed, in that same statement, Capital One claimed to "understand the concern and uncertainty you may be experiencing surrounding the coronavirus (COVID-19)" and claimed that it was "committed" to responding to customers' needs. *Id.* In other words, this was not just an encouragement to call customer service; it was a promise that relief would be provided specifically to alleviate "financial difficulties" resulting from COVID-19. Thus, based on these statements specific to COVID-19 it was reasonable for Ms. Fitzpatrick and other customers to believe that a new and separate system had been set up to provide relief—or at least meaningfully consider customer requests for help from discretionary charges—if the customer contacted Capital

One after being impacted by COVID-19. This statement, like Capital One's other public representations concerning its COVID relief efforts, induced Ms. Fitzpatrick to continue using her Capital One credit card instead of taking other actions to avoid credit card fees. *Id.* ¶ 44.

Second, even if Ms. Fitzpatrick had only seen and heard press coverage of Capital One's statements alone, she would have still sufficiently alleged reliance. "[A] defendant's misrepresentation may be an 'immediate cause' of a plaintiff's injury-producing conduct even though the defendant did not make the misrepresentation directly to the plaintiff, and even though the plaintiff never heard or read the precise words of the misrepresentation." *Gonzalez v. Drew Indus. Inc.*, No. CV0608233DDPJWJX, 2009 WL 10671688, at *4 (C.D. Cal. Aug. 26, 2009) (citing and quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1111 (Cal. 1993) (J. Kennard, dissenting)). It doesn't matter whether Ms. Fitzpatrick heard or saw Capital One's statements directly from Capital One or heard or saw them in media reports that transmitted them to the public. What matters is that Capital One's misrepresentations induced her to act to her detriment. Indeed, the California Supreme Court in *In re Tobacco II* held that for purposes of the UCL, "reliance" need not even be tied to any specific misrepresentation. *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009) (plaintiff "not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements" where they were part of "an extensive and long-term advertising campaign"). Ms. Fitzpatrick alleged she was harmed by Capital One's publicity campaign—and she pleaded numerous examples of statements made as part of that campaign, including a press release, seven quotes made by Capital One representatives, and eight news articles or third-party reports based on or directly quoting Capital One's own statements.

This case is therefore distinguishable from the cases cited by Capital One in which news coverage analyzed or editorialized on defendants' actions. *See Hershfang v. Citicorp*, 767 F. Supp. 1251, 1256 (S.D.N.Y. 1991) (newspaper articles citing an opinion and an unnamed source from the bank did not provide the specificity required in a securities fraud case to allow the defendant to know "who made these allegedly fraudulent remarks, when they were made, and where they were made"); *Frank H. Cobb, Inc. v. Cooper Companies, Inc.*, No. 89 CIV. 5323 (MGC), 1992 WL 77600, at *4 (S.D.N.Y. Mar. 23, 1992) (single statement in news article that was not a quote and was not attributable to the

1  defendant not actionable). In contrast to the cases cited by Capital One, Mot. 13-14, the quoted news

2  reports were directly attributable to Capital One's own statements. *E.g.*, SAC ¶ 29 (statement by

3  Capital One spokesperson quoted directly in article); *id.* ¶ 31 (direct quote from Capital One

4  spokesperson in Forbes article).

5       Indeed, Capital One concedes that Ms. Fitzpatrick may hold Capital One liable for third-party

6  media reports if Capital One "made, adopted, or controlled" the statements in those reports. Mot. 13

7  (quoting *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648, 656 (S.D. Cal. 2014)). That's exactly

8  what Ms. Fitzpatrick alleges Capital One did here: it issued public statements and allowed itself to be

9  quoted and reported in numerous media reports to perpetuate the narrative that it was providing relief

10 to customers. SAC ¶¶ 29-31, 33-35. It therefore made, adopted, *and* controlled those statements.

11 Construing the SAC's allegations in Ms. Fitzpatrick's favor, which the Court is required to do at this

12 stage, it is inferable that Capital One's publicity strategy worked as intended, and the media statements

13 Plaintiff heard and saw repeated Capital One's press releases and statements, all of which are quoted

14 in the SAC. This is especially true considering that Ms. Fitzpatrick provided several examples in the

15 SAC of media outlets reporting and quoting Capital One's promises in their coverage. *E.g.*, SAC ¶¶

16 29, 31. It would thus make no sense to hold that such statements are not actionable merely because,

17 in a few cases, customers saw them in newspaper articles or nightly news reporting, just as Capital

18 One intended. Accordingly, Ms. Fitzpatrick has met her burden under Rule 9(b) for several reasons.[1]

19            **2.       The SAC pleads cognizable harm.**

20       The SAC likewise pleads that Ms. Fitzpatrick suffered harm from Capital One's deceptive

21 statements that it would provide relief in the event the customer experienced pandemic-related

22 hardship. Capital One argues otherwise, Mot. 15-16, but it misstates and fails to acknowledge key

23 allegations.

24

25 [1] Capital One wrongly claims that Ms. Fitzpatrick previously "acknowledged that Capital One
   implemented forbearance programs." Mot. 12 (quotations omitted). But she alleged that Capital One
26 "patted itself on the back for its pandemic response" by "*claiming*" that it had "implemented
   forbearance programs, which allowed customers to skip payments with no late fees." *E.g.*, First Am.
27 Compl. ¶ 34 (emphasis added). Ms. Fitzpatrick never "acknowledged" that Capital One *in fact*
   implemented such programs. Her theory of the case is that Capital One claimed it was doing so but
28 did not.

Capital One argues only that Ms. Fitzpatrick does not plead reliance on the statement on Capital One's "Customer Assistance" webpage because she incurred the three late fees charged to her before she saw this statement. But "*[e]ach time* she was assessed a late fee," she saw Capital One's statements about COVID-19 relief, which continued to reasonably deceive her into thinking that Capital One would *not* continue to insist that the late fees would remain due and owing to Capital One. In light of Capital One's commitment on its website's COVID-19 page, she believed she would be relieved of such hardships. SAC ¶ 40 (emphasis added). She thus must have seen—and relied on— Capital One's website misrepresentations at minimum prior to incurring her second and third late fees. Each time she suffered from the reasonable, but mistaken, belief that Capital One would live up to its commitment to relieving COVID-19 hardship, rather than capitalizing from it by racking up assessed fees. The SAC further alleges that this statement, together with Capital One's promises to provide relief she heard and saw in news reports, induced her to continue using her credit card, because "she would have used another card to try to ensure that she would avoid such fees" had she known "that Capital One did not intend to keep its promises to use its discretion to grant customers relief from credit card late fees during the pandemic." *Id.* ¶ 44.

She further alleges that she *did* close her credit card account with Capital One when it became clear that Capital One was not going to honor its commitment to provide relief from, and not add to, COVID-19 financial difficulties. *Id.* ¶ 46. A reasonable inference from these allegations is that Capital One's repeated promises and statements caused her to give Capital One the benefit of the doubt and keep using her credit card until Capital One denied her requests for relief enough times to demonstrate that it had no relief program in place and would not meaningfully consider her requests. This is sufficient to plead a cognizable injury.

### 3. It's premature to dismiss Plaintiff's equitable claims based on the existence of an adequate remedy at law.

Capital One asks the Court to dismiss Ms. Fitzpatrick's UCL and unjust enrichment claims based on existence of an adequate remedy at law. Mot. 16-18. Doing so at this stage would be premature and manifestly unjust to Ms. Fitzpatrick. It is too early in this proceeding to find that there is an adequate remedy at law that would render her alternative request for restitution unnecessary.

1   The Ninth Circuit's decision in *Sonner*, on which Capital One relies, does not counsel a

2   different result. In *Sonner*, the appeals court held that a plaintiff failed to "establish that she lack[ed] an

3   adequate remedy at law before seeking equitable restitution," where her newly amended complaint

4   failed to allege no adequate remedy at law and she amended her complaint to drop a damages claim

5   "[o]n the brink of trial after more than four years of litigation." *Sonner v. Premier Nutrition Corp.*, 971

6   F.3d 834, 837, 844 (9th Cir. 2020). *Sonner* said nothing about the propriety of seeking equitable relief

7   in the alternative at the pleading stage.

8   On that point, *Krause-Pettai v. Unilever U.S., Inc.*, No. 20cv1672 DMS (BLM), 2021 WL 1597931

9   (S.D. Cal. April 23, 2021), is instructive. In *Krause-Pettai*, the court rejected the defendant's argument

10  that it should dismiss the equitable-relief claim based on a failure to allege no adequate remedy at law.

11  In doing so, the court distinguished *Sonner*. The *Krause-Pettai* court emphasized that *Sonner* involved a

12  factually specific situation in which, right before trial, the plaintiff made a strategically motivated

13  attempt to re-arrange her claims to lighten her burden of proof at trial by avoiding a jury and forcing

14  a bench trial. *See id.* at *4; *see also Nacarino v. Chobani, LLC*, No. 20-cv-7437-EMC, 2022 WL 344966,

15  at *9 (N.D. Cal. Feb. 4, 2022) ("*Sonner* teaches that a plaintiff, on the eve of trial, cannot create an

16  inadequacy of a legal remedy by eliminating its availability by taking volitional action.").

17  Courts regularly find that *Sonner* is inapplicable at the pleading stage, and they routinely find

18  that adequacy of law arguments with respect to restitution are premature—even where a plaintiff seeks

19  damages in the complaint—because it is unclear at the pleading stage whether damages can be proven.

20  *See, e.g.*, *Krause-Pettai*, 2021 WL 1597931 at *4; *Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065

21  (C.D. Cal. 2021) (agreeing that plaintiff "'may be entitled to restitution under the UCL, while not

22  entitled to damages under other causes of action' which may impose more stringent elements that

23  plaintiff may ultimately not be able to prove" and concluding that "plaintiff has sufficiently established

24  at this stage that she lacks an adequate remedy at law with respect to her claims for equitable relief"

25  because restitution under the CLRA or UCL may be "more certain, prompt, or efficient than the

26  monetary damages she seeks, but may ultimately not attain"); *Rothman v. Equinox Holdings, Inc.*, No.

27  2:20-cv-9670-CAS-MRWx, 2021 WL 1627490, at *12 (C.D. Cal. April 27, 2021) (rejecting the

28  argument that there was an adequate remedy at law because the plaintiff alleged CLRA damages,

1  declining to dismiss request for restitution, and concluding that it was "premature at this stage of the

2  litigation to determine whether plaintiff's alleged injuries have an adequate remedy at law").

3  When there is no gamesmanship like that attempted in *Sonner*, courts affirm a plaintiff's right

4  to pursue alternative remedies at the pleading stage and accordingly decline to find that there is an

5  adequate remedy at law such that equitable relief should be dismissed. *See, e.g.*, *Krause-Pettai*, 2021 WL

6  1597931 at *4; *Junhan Jeong v. Nexo Financial LLC*, No. 21-cv-2392-BLF, 2022 WL 174236, at *27 (N.D.

7  Cal. Jan. 19, 2022) (emphasizing that, "in light of *Sonner*'s limited applicability to the pleading stage,

8  there is no binding precedent that holds that pleading equitable restitution in the alternative is

9  improper"); *Sagastume v. Psychemedics Corp.*, No. CV 20-6624 DSF (GJSx), 2020 WL 8175597, at *7

10  (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at

11  the pleading stage."); *Deras v. Volkswagon Group of Amer. Inc.*, No. 17-cv-5452-JST, 2018 WL 2267448,

12  at *6 (N.D. Cal. May 17, 2018) ("This Court finds no bar to pursuit of alternative remedies at the

13  pleading stage.") (quotations and citations omitted).

14  And so it should be here. While Ms. Fitzpatrick seeks damages under her contract claim, which

15  Capital One seeks to dismiss, she may not ultimately be able to prove those damages. *See, e.g.*, *Coleman*,

16  554 F. Supp. 3d at 1065. It is thus premature to determine whether she has an adequate remedy at law

17  that would justify dismissal of her claims for restitution. Indeed, Capital One itself argues that Ms.

18  Fitzpatrick has no remedy under contract law. Mot. 7-10. Accordingly, like many courts have done at

19  the pleadings, this Court should decline to dismiss Ms. Fitzpatrick's claim for restitution at this stage.

20  **4.      Plaintiff has standing to pursue injunctive relief.**

21  Capital One asserts that Ms. Fitzpatrick "lacks Article III standing" to seek injunctive relief

22  because she closed her credit card account. Mot. 19. This ignores the allegation that she "would once

23  again open a credit card with Capital One" if "she knew that Capital One would abide by its promises

24  and exercise its discretion fairly in the future." SAC ¶ 46. A plaintiff's allegation of inability to use a

25  defendant's product or service they desire to use due to the defendant's false representations is

26  sufficient to establish standing at the pleading stage. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956,

27  971 (9th Cir. 2018) (plaintiff had standing to seek injunctive relief where she pleaded that she desired

28  to purchase defendant's product, but defendant's false advertising gave her "no way of determining

1   whether the representation" was true). Ms. Fitzpatrick alleges she would use a Capital One credit card

2   if she could believe Capital One's promise to provide relief to customers impacted by the pandemic.

3          Because Ms. Fitzpatrick alleges that she would use the Capital one credit card again, she is at

4   risk of being deceived by Capital One's misstatements about the availability of COVID relief in the

5   future. She could again fall victim to Capital One's fraud based on her reasonable, but incorrect, belief

6   that Capital One had fixed its deception such that it was now honoring its commitment to relieve

7   financial difficulties related to COVID-19, rather than use its discretion to take advantage of them.

8   *Pizana v. SanMedica Int'l LLC*, No. 1:18-cv-644-DAD-SKO, 2019 WL 4747947 (E.D. Cal. Sept. 30,

9   2019) (relying on *Davidson* to find standing to seek injunctive relief based on future purchasing intent

10  even though plaintiff was now aware of the deception). There is future harm sufficient for Article III

11  standing because she could not rely on Capital One's statements about COVID relief in the future

12  with any confidence. *See Johnson-Jack v. Health-Ade LLC*, No. 21-cv-7895-LB, --F.Supp.3d--, 2022 WL

13  562827, at *12 (N.D. Cal. Feb. 24, 2022) (finding standing for injunctive relief where plaintiffs alleged

14  "that they want to purchase the [kombucha-beverage] product in the future" and because "plaintiffs

15  cannot rely on the labels on a going-forward basis").

16         Because she has standing to seek injunctive relief under *Davidson*, Ms. Fitzpatrick lacks an

17  adequate remedy at law for the additional reason that no remedy at law could protect her from future

18  harm from Capital One's deception. *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1159-60 (S.D.

19  Cal. 2021) (rejecting argument that plaintiffs failed to show that they lacked an adequate remedy at law

20  where the court had already rejected an Article III challenge to injunctive relief based on *Davidson*);

21  *Andino v. Apple, Inc.*, No. 2:20-cv-1628-JAM-AC, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021)

22  ("Money damages are an inadequate remedy for future harm"); *Aerojet Rocketdyne, Inc. v. Glob. Aerospace,*

23  *Inc.*, No. 2:17-cv-1515-KJM-AC, 2020 WL 3893395, at *5 (E.D. Cal. July 10, 2020) (same).

24         **C.    The Complaint states a claim for breach of the implied covenant of good faith**
                   **and fair dealing.**

25         Ms. Fitzpatrick also alleges that Capital One breached the implied covenant of good faith and

26  fair dealing embedded in every contract by reserving to itself the discretion to charge or waive credit

27  card late fees and interest on overdue balances but then exercising its discretion solely in its favor.

28

SAC ¶¶ 62-69. "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1086 (N.D. Cal. 2012). A party must exercise this power "to assure that the promises of the contract are effective and in accordance with the parties' legitimate expectations." *Id.*

Here, Ms. Fitzpatrick's implied covenant claim is grounded on Capital One's own contract, and Capital One's discretion is limited by good faith and fair dealing, which includes exercising good faith when it retains discretion to (and promises to act in accordance with) particular circumstances. *See Boobuli's LLC, v. State Farm Fire and Casualty Co.*, No. 20-CV-07074-WHO, 2021 WL 7160671, at *13 (N.D. Cal. Oct. 5, 2021) (implied covenant claim premised on State Farm's refusal to adjust premiums when COVID-19 financially harmed the plaintiff, despite retaining discretion to do so, survived motion to dismiss). In an unprecedented global pandemic in which Capital One promised refunds to impacted customers, Ms. Fitzpatrick alleges that such good faith and fair dealing required Capital One to exercise its discretion to issue requested refunds for fees she incurred due to hardship related to COVID-19 (or at least set up a program to meaningfully consider such requests), but Capital One instead conducted business as usual by retaining these fees to maximize profits. SAC ¶¶ 27-47. This is sufficient to state a claim. *See, e.g.*, *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 954 (N.D. Cal. 2009) (claim that bank "abus[ed] its discretion so as to maximize . . . its penalty charges" adequately stated claim for breach of good faith and fair dealing); *Fludd v. S. State Bank*, No. 2:20-CV-1959-BHH, 2021 WL 4691587, at *13 (D.S.C. Oct. 7, 2021) (plaintiff stated implied covenant claim where she alleged that bank acted out of motive to maximize revenues when assessing account fees, rather than "carry[ing] out its contractual duties in good faith"); *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 51 (E.D.N.Y. 2014) ("The Plaintiffs maintain that HSBC breached the covenant of good faith and fair dealing implicitly contained in the Rules by implementing its overdraft policy in an abusive manner. HSBC counters that it could not have acted in bad faith in posting debit transactions from high to low because the Rules explicitly granted it the authority to do so. The Court agrees with the Plaintiffs.").

1.     **The pleading stage is not the proper place to resolve choice of law issues.**

Capital One does not even challenge the sufficiency of Ms. Fitzpatrick's implied covenant claim under California law. Instead, it argues that Virginia law applies based on the choice of law provision in its credit card agreement. It is premature to make this determination here.

This is a nationwide class action in which Ms. Fitzpatrick alleges an implied covenant claim on behalf of all class members under the laws of all the states. SAC ¶¶ 49, 64. Plaintiff asserts that California law applies to her claim, and the laws of "the states in which Capital One does business" apply to those of class members. *Id.* ¶ 64. Capital One does not brief choice of law, and "California has a strong interest in providing a remedy for wrongs committed against its citizens." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1190 (9th Cir. 2009). Further briefing and discovery will show that other states likewise have strong interest in enforcing their laws in this context for class members who banked with Capital One in those states. It is therefore premature to apply Virginia law at the pleading stage without further briefing and factual development. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, No. SACV12812JLSRNBX, 2015 WL 12766050, at *4 (C.D. Cal. Nov. 23, 2015) (deferring decision on applicability of contractual choice-of-law provision in potential nationwide class action); *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *10 (N.D. Cal. Mar. 14, 2017) (deferring choice-of-law analysis in multistate class action "until a later stage of the proceeding, when it has been properly briefed by the parties and when the facts of this case have been more fully developed").

2.     **The SAC pleads a breach of the implied covenant under Virginia law.**

Even assuming Virginia law applies, the SAC states a claim for breach of Virginia's implied covenant. Citing inapposite case law, Capital One mischaracterizes Ms. Fitzpatrick's implied covenant claim as an attempt to rewrite or modify Capital One's contract of adhesion. Mot. 8. Ms. Fitzpatrick is not trying to override the terms of her agreement with Capital One; she is simply challenging Capital One's bad-faith exercise of the discretion it reserved for itself to assess late fees and interest.

In Virginia, as elsewhere, the implied covenant "prohibits a party from exercising 'contractual discretion in bad faith, even when such discretion is vested solely in that party.'" *Mawyer v. Atl. Union Bank*, No. 3:21CV726 (DJN), 2022 WL 1049311, at *5 (E.D. Va. Apr. 7, 2022) (quoting *Va. Vermiculite,*

1  *Ltd. v. W.R. Grace & Co.–Conn.*, 156 F.3d 535, 542 (4th Cir. 1998)). And although the implied covenant

2  generally does not "prevent a party from exercising its explicit contractual rights," a party is

3  nonetheless "forbidden from acting dishonestly" in the exercise of those rights. *Stoney Glen, LLC v. S.*

4  *Bank & Tr. Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013). As the Supreme Court of Virginia explained,

5  the term "'good faith' is defined as 'honesty in fact in the conduct or transaction concerned.'" *Charles*

6  *E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 386 (Va. 1996).

7        Here, for the reasons detailed above, the SAC pleads a bevy of allegations establishing that

8  Capital One breached the implied covenant by refusing to exercise its discretion to refund Ms.

9  Fitzpatrick's fees incurred due to hardship related to COVID-19, and instead conducting business as

10  usual by retaining these fees to maximize profits after promising to help customers facing financial

11  hardship during the pandemic. *See, e.g.*, *Gutierrez*, 622 F. Supp. 2d at 954; *Fludd*, 2021 WL 4691587, at

12  *13; *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d at 51.

13        Capital One argues that Ms. Fitzpatrick's implied covenant claim fails because it was exercising

14  an express contractual right, rather than contractual discretion. Mot. 8. But Capital One's use of "may"

15  instead of "will" in the credit card agreement is a reservation of discretion as to when to choose to

16  assess such fees or interest of define the conditions for assessing them. Capital One argues that this

17  distinction between "may" and "will" is meaningless, Mot. 9, but it's a crucial difference. The "may"

18  language gives Capital One discretion to impose fees and creates an expectation among the contracting

19  parties that it will carry out this discretion in good faith. In contrast, "will" language confers no

20  discretion; the assessment of fees is presumed to be automatic and creates a contractual right to do

21  something limited only by the prohibition on dishonest conduct. Multiple federal courts have

22  recognized that contractual provisions providing a financial institution with discretion over bank fees

23  grant the type of discretion subject to the implied covenant. *See, e.g.*, *In re HSBC Bank*, 1 F. Supp. 3d

24  at 54 (permitting claim to proceed despite HSBC's argument that it had contractual authority to post

25  debit transactions from high to low); *Gutierrez*, 622 F. Supp. 2d at 954 (permitting claim to proceed

26  despite Wells Fargo's argument that it had contractual authority to post items to checking account in

27  any order the bank chose); *Swift v. BancorpSouth, Inc. (In re Checking Account Overdraft Litig.)*, No. 1:09-

28  MD02036-JLK, 2013 U.S. Dist. LEXIS 154432, at *39 (S.D. Fla. Oct. 24, 2013) (denying summary

judgment against good faith and fair dealing claim where contract afforded bank discretion which it was alleged to have exercised in bad faith); *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1364 (N.D. Ga. 2008) ("The court cannot find as a matter of law that the Deposit Agreement's statement that Wachovia 'may' post items 'in any order' expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, and maximize overdraft fees in the ways the Complaint alleges.").[2] Thus, the implied covenant applies in full force to Capital One's actions.

Even if this contractual discretion were deemed a contractual *right*, Ms. Fitzpatrick has *still* stated a claim for breach of the implied covenant. The SAC alleges that Capital One acted dishonestly in the "transaction concerned," *Charles E. Brauer Co.*, 466 S.E.2d at 386—its exercise of the right to assess or waive credit card late fees, which it carried out in bad faith by promising customers "that it would waive late fees and interest and provide other financial assistance during the deadly COVID-19 pandemic" but instead "consistently exercised its discretion in its own favor" by denying those requests. SAC ¶ 10. Indeed, Capital One "never meaningfully *considered* [Ms. Fitzpatrick's] request for assistance at all," despite its "promise that 'all customers' would be eligible for relief." *Id.* ¶ 45 (emphasis in original). This is enough to state a claim in any event.

A federal court's decision in *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443 (E.D. Va. 2009), is instructive. There, the plaintiff—a prospective space tourist—paid the defendant millions of dollars to secure a seat on a spaceflight. *Id.* at 446-47. Later, the defendant informed the plaintiff that it would not go forward with the flight because the Russian space agency in charge of the mission had determined that the plaintiff was medically unfit to go into space. *Id.* at 448. The contract provided that any payments were nonrefundable after a certain date (which predated the determination on the plaintiff's medical condition). *Id.* at 446-47. Thereafter, the defendant refused to refund the deposits. *Id.* at 448. The defendant argued that the implied covenant didn't apply because the contract made the

---

[2] Plaintiff acknowledges that one case cited by Capital One, *Lambert v. Navy Federal Credit Union*, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019), found that a credit union had a contractual right—not just discretion—to charge certain account fees, despite the contract's use of "may" rather than "will," *id.* at *5. But this Court should give this nonbinding decision no weight. It goes against all the federal court authority just cited, and it tellingly did not cite any *Virginia* precedent or persuasive authority supporting its conclusion on this point.

1  deposits expressly nonrefundable and "explicitly disavow[ed] the possibility that Defendant owed

2  Plaintiff any fiduciary or other special duties" regarding medical fitness. *Id.* at 450.

3      The court rejected the defendant's argument: the plaintiff did not seek "redress through an

4  implied covenant claim merely for Defendant's unfavorable exercise of its explicit contractual rights."

5  *Id.* Rather, the plaintiff alleged that the defendant's actions were "actually dishonest." *Id.* The plaintiff

6  alleged that the defendant "purposefully failed to provide him with a space flight and purposefully

7  failed to inform him of the high likelihood of medical disqualification until after he had paid three or

8  four payments," conduct that rose to the level of "bad faith and unfair dealing in a contractual

9  relationship." *Id.* at 451.

10     Here, as in *Enomoto*, the SAC alleges that Capital One purposefully failed to provide Ms.

11 Fitzpatrick a waiver or refund of the late fees it imposed, despite its widely publicized promises, and

12 purposefully failed to inform her that it had no intention of setting up a system even to consider her

13 requests. SAC ¶¶ 11, 43-45, 47. She does not seek redress for Capital One's unfavorable decision to

14 assess late fees; she seeks redress for its dishonest exercise of its purported right by not meaningfully

15 considering her request for relief at all after it promised to do so. *Id.* ¶ 45. Capital One's actions induced

16 her to continue performing under an at-will credit card agreement by falsely providing assurances of

17 relief under the circumstances. *Id.* ¶ 44. These alleged lies state an implied covenant claim. *See Docena

18 v. Navy Fed. Credit Union*, No. 315CV00184LRHWGC, 2016 WL 53826, at *3 (D. Nev. Jan. 4, 2016)

19 (under Virginia law, implied covenant claim lies where plaintiff alleges that the bank "had specifically

20 lied to him").

21     Capital One's reliance on *Dress* and *Pfahning* is unavailing. In both of those cases, the plaintiff

22 alleged no dishonesty: by using "will" instead of "may, Capital One's contract gave it the *right* to charge

23 interest on certain unpaid balances, and it did as expected. *Dress v. Cap. One Bank (USA), N.A.*, No.

24 1:19-CV-00343, 2019 WL 3451304, at *1, *6 (E.D. Va. July 30, 2019), *aff'd*, 849 F. App'x 55 (4th Cir.

25 2021); *Pfahning v. Cap. One Bank (USA), N.A.*, No. 1:19-CV-950, 2019 WL 13167182, at *2, *7 (E.D.

26 Va. Dec. 5, 2019). Here, Capital One gave itself discretion, not an express right, to assess late fees and

27 interest. Moreover, Capital One's alleged dishonesty in charging late fees and interest here further sets

28 this case apart from *Dress* and *Pfahning*. *Compare* SAC ¶¶ 11, 45, 47 *with Dress*, 2019 WL 3451304, at *7

1   ("Plaintiffs have not plausibly identified any false or misleading statements made by Capital One.");

2   *Pfahning*, 2019 WL 13167182, at *1 (plaintiff's two causes of action were based on what "Plaintiff

3   believed," with no allegation of fraud or dishonesty by Capital One).

4       **D.      The Complaint states an unjust enrichment claim.**

5       The SAC also states a claim for unjust enrichment. *See* SAC ¶¶ 72-82. The elements of an

6   unjust enrichment claim are "receipt of a benefit and unjust retention of the benefit at the expense of

7   another." *Lyles v. Sangadeo-Patel*, 171 Cal. Rptr. 3d 34, 40 (Cal. Ct. App. 2014) (internal quotation marks

8   omitted). Ms. Fitzpatrick alleges that Capital One received a benefit (credit card late fees) and unjustly

9   retained them, despite promising waivers or refunds. SAC ¶¶ 75-77.

10      Capital One argues that the claim is barred because "Plaintiff admits . . . that her account is

11  'governed by the Credit Card Agreement.'" Mot. 18 (quoting SAC). Wrong again. The existence of an

12  enforceable contract covering the dispute "does not doom the claim at the motion to dismiss stage"

13  when the unjust enrichment claim does not "expressly arise out of any breach of contract." *Obertman*

14  *v. Electrolux Home Care Prod., Inc.*, 482 F. Supp. 3d 1017, 1028 (E.D. Cal. 2020). Moreover, "restitution

15  may be awarded in lieu of breach of contract damages when the parties had an express contract, but

16  it was procured by fraud or is unenforceable or ineffective for some reason." *Parino v. BidRack, Inc.*,

17  838 F. Supp. 2d 900, 908 (N.D. Cal. 2011) (internal quotation marks omitted).

18      All this makes sense because "the theory underlying" unjust enrichment is that "a defendant

19  has been unjustly conferred a benefit though mistake, fraud, coercion, or request." *Obertman*, 482 F.

20  Supp. 3d at 1027. In this case, Ms. Fitzpatrick's unjust enrichment claim is premised on the benefits

21  Capital One earned through its fraudulent representations to the public that it would provide relief

22  from credit card fees during the pandemic. *See* SAC ¶ 4 (Alleging Capital One made its misleading

23  promise in part to "attract more business and investors"); *id.* ¶ 44 ("[B]ecause of Capital One's

24  promises to help, she did not believe that using another card was necessary.").

25      To be clear, there is overlap in the harms Ms. Fitzpatrick seeks to remedy through her unjust

26  enrichment claim and those she seeks to remedy in her good faith and fair dealing claim, but "Ninth

27  Circuit law is well-settled" that unjust enrichment claims in such cases are "cognizable and not

28  duplicative of other claims for breach of contract or restitution." *Freeman v. Indochino Apparel, Inc.*, 443

1   F. Supp. 3d 1107, 1114 (N.D. Cal. 2020). The law allows an alternatively pleaded unjust enrichment

2   claim here: Ms. Fitzpatrick could lose on her contract claim and nevertheless recover under her unjust

3   enrichment claim because Capital One's misleading promises of fee relief during the pandemic

4   induced her (and putative class members) to open, or maintain, credit card accounts with Capital One

5   or to avoid actions that could have mitigated the fees assessed. *See* SAC ¶¶ 4, 44.

6        Even if Capital One did not breach its duty of good faith and fair dealing with Ms. Fitzpatrick

7   (it did), a jury could find that it obtained profits from credit card fees it imposed on her through fraud

8   by using its promises of relief to induce her to keep using her credit card. Thus, she alleges that Capital

9   One "has been unjustly conferred a benefit though mistake, fraud, coercion, or request." *Obertman*,

10   482 F. Supp. 3d at 1027; *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767,

11   803 (N.D. Cal. 2019) ("The plaintiffs are permitted to plead claims for breach of contract and unjust

12   enrichment in the alternative.").

13        The cases cited by Capital One are off point. In *Maloney*, an unpublished decision, the plaintiff

14   incorporated inconsistent *facts* that undercut the cause of action. *Maloney v. Scottsdale Ins. Co.*, 256 F.

15   App'x 29, 31 (9th Cir. 2007). Here, Ms. Fitzpatrick pleads and incorporates fully consistent facts in

16   support of alternative *legal* theories. *RBB2, LLC v. CSC ServiceWorks, Inc.*, involved allegations of breach

17   of an *express* contractual provision, and there was no alleged fraud involved, 2019 WL 1170484, at *11-

18   12 (E.D. Cal. Mar. 13, 2019). Indeed, the *RBB2* court reaffirmed that unjust enrichment may be

19   pleaded in the alternative and "restitution may be awarded in lieu of breach of contract damages when

20   the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for

21   some reason." *Id.* at *11 (internal quotations omitted). And *Frank Brunckhorst Co. v. Coastal Atlantic,*

22   *Inc.*, involved only harm arising directly from alleged breach of a contract, not fraudulent conduct that

23   could be actionable independent of the breach. 542 F. Supp. 2d 452, 465 (E.D. Va. 2008).

## IV.   CONCLUSION

25        For all these reasons, the Court should deny Capital One's Motion to Dismiss.

1   Date: June 24, 2022                                    By: _/s/ Annick M. Persinger_
                                                              Annick M. Persinger (CA Bar No. 272996)
2                                                             **TYCKO & ZAVAREEI LLP**
                                                              1970 Broadway, Suite 1070
3                                                             Oakland, CA 94612
                                                              (510) 254-6808
4                                                             _apersinger@tzlegal.com_

5                                                             Hassan A. Zavareei (CA Bar No. 181547)
                                                              Andrea R. Gold*
6                                                             Lauren Kuhlik*
                                                              Glenn E. Chappell*
7                                                             **TYCKO & ZAVAREEI LLP**
                                                              1828 L Street, NW, Suite 1000
8                                                             Washington, DC 20036
                                                              (202) 973-0900
9                                                             _hzavareei@tzlegal.com_
                                                              _agold@tzlegal.com_
10                                                            _lkuhlik@tzlegal.com_
                                                              _gchappell@tzlegal.com_
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28